IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   14-cv-0745-WYD-MJW

JAMES DURKEE,

    Plaintiff,

v.

SHERIFF JOHN MINOR, in his official and individual capacities;
SERGEANT RON HOCHMUTH, in his individual capacity,

    Defendants.

---

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment (ECF No. 47), filed on March 19, 2015. The Defendants' motion seeks summary judgment on Plaintiff's claims alleging that the Defendants violated his Fourteenth Amendment rights under 42 U.S.C. § 1983.

This action arises from an assault by a fellow inmate upon the Plaintiff while both were detained at the Summit County Jail in Colorado. The following facts are undisputed. Inmate Ricky Michael Ray Ramos ("Ramos") had a history of aggressive behavior at the jail, and had been charged with several violations of jail rules on several occasions for threatening behavior towards jail staff, including a threat to stab a deputy in the neck, and toward other inmates, including the Plaintiff. Ramos had threatened Plaintiff shortly after Plaintiff's arrival at the jail, and Plaintiff requested that he be reassigned to another housing pod away from Ramos. After an argument between

Ramos and Plaintiff, Plaintiff again expressed concern about Ramos' aggression toward him. A deputy issued an incident report stating that "[f]or future reference [Plaintiff] and Ramos cannot attend any programs together or ever be in the hallways or [booking] passing." Jail staff, including Defendant Hochmuth, acknowledged and initialed receipt of the notice.

On December 28, 2012, Ramos was being escorted back from a court proceeding by Defendant Hochmuth, and was unshackled in the booking area of the jail, which is adjacent to the professional visitation room. At that time, Plaintiff was in the visitation room, meeting with a mental health counselor. There are windows in the visitation room and those meeting inside are visible to those in the booking area. Plaintiff states that he saw both Ramos and Defendant Hochmuth in the booking area through the visitation room window. Defendant Hochmuth contends that he did not see the Plaintiff in the visitation room. Defendant Hochmuth proceeded to unshackle Ramos in the booking area, and instructed him to return to his housing pod. After taking one or two steps toward the housing pod door, Ramos suddenly turned around and ran into the visitation room through its unlocked door and assaulted Plaintiff. Although the altercation was brief, Plaintiff suffered a facial fracture from the assault.

Plaintiff contends that Defendant Hochmuth disregarded the risk to Plaintiff's safety by allowing Ramos to be unrestrained in the booking area with access to the unlocked visitation room, knowing of Ramos' history of aggressive behavior and of the report instructing that the two never be in contact. Plaintiff further contends that Defendant Hochmuth's actions were sanctioned by Defendant Minor, and were in accordance with the customs, policies, and practices of the Summit County Jail.

Defendants assert that summary judgment should be granted on all of Plaintiff's claims. Specifically, Defendants argue that Defendant Minor is entitled to summary judgment on the claim against him in his individual capacity because he did not participate in any of the events that Plaintiff alleges violated his rights. Defendants argue that Defendant Hochmuth did not act with the requisite deliberate indifference to a substantial risk of serious harm to Plaintiff. Defendants also argue that both Defendants are entitled to the defense of qualified immunity. Finally, Defendants argue that there is no evidence of an unconstitutional policy, practice, or custom that would support Plaintiff's claims of municipal liability against Defendant Minor.

II.   STANDARD OF REVIEW

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome of the dispute under the applicable law. *Ulissey v. Shvartsman,* 61 F.3d 805, 808 (10th Cir. 1995). I must construe all inferences in favor of the party against whom the motion under consideration is made. *Pirkheim v. First Unum Life Ins. Co.,* 229 F.3d 1008, 1010

(10th Cir. 2000). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

III. <u>DISCUSSION</u>

*A. Defendant Hochmuth – individual capacity*

There is a constitutional obligation imposed on jail officials to protect against inmate-on-inmate violence, and an official may be held liable under the Eighth Amendment[1] if he knows that an inmate faces a substantial risk of serious harm, and with deliberate indifference to an inmate's health or safety, disregards that risk by failing to take reasonable measure to abate it. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Craig v. Eberly*, 164 F.3d 490 (10th Cir. 1998). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834, citing *Rhodes v. Chapman*, 452 U.S. 337, 337 (1981). A constitutional violation occurs only where the deprivation alleged is objectively "sufficiently serious," and the official acted with "deliberate indifference" to the inmate's safety. *Farmer*, 511 U.S. at 834.

It is undisputed that Plaintiff, from the time of his arrival at the Summit County Jail, faced threats from Ramos, and that after being moved to a new housing pod, the threats continued from Ramos, and Plaintiff notified the jail staff of his concern that Ramos would fight him. It is also undisputed that Defendant Hochmuth knew not only about Ramos' history of aggressive behavior at the jail, both toward jail staff and other

---

[1] "Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement . . . the Eighth Amendment standard provides the benchmark for such claims." Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998), citing *McClendon v. City of Albuquerque,* 79 F.3d 1014, 1022 (10th Cir.1996).

4

inmates, but also about the instruction on file that Plaintiff and Ramos be kept separated at all times.

On the day of the assault, Plaintiff claims that Defendant Hochmuth demonstrated deliberate indifference to his safety by allowing Ramos to be unrestrained in a room adjacent to the room he occupied, which had a window that allowed those outside to see who was inside, and which had an unlocked and unsecured door. Pl.s' Response, ECF No. 54, p. 13, 15. Plaintiff contends that Hochmuth knew or should have known that Plaintiff was in the adjacent room. *Id.* at 15-16. He claims that Ramos was aware of the Plaintiff's presence in the adjoining room, and that Plaintiff was aware that Ramos was in the booking area with Defendant Hochmuth. *Id.*

Defendants claim that Defendant Hochmuth was unaware of the Plaintiff's presence in the visitation room on the day of the assault. Def.'s Mt. for Sum. Jud., ECF No. 47, p. 10. They also claim that Defendant Hochmuth was watching Ramos closely because Ramos appeared to be agitated in the courtroom prior to the assault. *Id.* They claim that Defendant Hochmuth never looked through the window into the visitation room and did not know anyone was in there at the time. *Id.* They claim that Defendant Hochmuth was surprised by Ramos' actions and did not understand what he was doing. *Id.* They claim that by escorting Ramos into the booking area, Defendant Hochmuth was not aware of any risk of harm to the Plaintiff, nor that escorting Mr. Ramos into the booking area posed a risk of harm to the Plaintiff. *Id.* They claim that Defendant Hochmuth had "no indication that Mr. Ramos was going to engage in violent behavior." *Id.*

The Supreme Court noted that deliberate indifference entails something more than negligence, but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. The courts of appeals have "routinely equated deliberate indifference with recklessness," and "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836-37.

A plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. A plaintiff who provides evidence that a substantial risk of attack was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier or fact to find that the defendant-official had actual knowledge of the risk." *Id.* at 842-43.

A defendant-official cannot escape liability for deliberate indifference by arguing that he did not know that the plaintiff was especially likely to be assaulted by the specific prisoner. *Id.* at 843. Instead, the question "is whether prison officials, acting with deliberate indifference, exposed the prisoner to a sufficiently substantial 'risk or serious damage to his future health.'" *Id.* Additionally, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact." *Id.* at 842.

The Supreme Court noted that a prison official may escape liability, even if he actually knew of a substantial risk to an inmate's safety, if he responded reasonably to the risk, even if the harm was not prevented. *Id.* at 844. However, whether Defendant Hochmuth acted reasonably is an issue of fact. Since genuine issues of material fact remain as to whether Defendant Hochmuth was deliberately indifferent to a substantial risk of serious harm to the Plaintiff, summary judgment is precluded as to Defendant Hochmuth in his individual capacity.

    *B. Defendant Minor – individual capacity*

Supervisory status alone does not create liability under Section 1983. There must be an affirmative link between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Where the failure to train or supervise results in a deliberate indifference to the rights of an inmate, liability under Section 1983 may be imposed on a supervisor.

Plaintiff argues that as the supervising authority over all members of the Summit County Sheriff's Office, his inadequate training and supervision of Defendant Hochmuth led to Defendant Hochmuth's deliberate indifference to the Plaintiff's safety. Pl.'s Response, ECF No. 54, p. 17. Plaintiff argues that under the customs, policies, and practices established by Defendant Minor, "Defendant Hochmuth removed the restraints from Mr. Ramos in the booking area of the jail while [Plaintiff] set a mere 12 feet away, behind the unlocked and unsecure door of the professional visitation room." *Id.* Further, Plaintiff notes that Defendant Hochmuth was aware that Ramos was agitated during his court proceeding before the assault, and that a separation order existed to

keep him away from Plaintiff.  *Id.*  Plaintiff asserts that "Defendant Hochmuth failed to ensure that [Plaintiff] was not in the area, and Defendant Minor found nothing wrong with those actions."  *Id.*  Plaintiff urges that his argument of inadequate supervision should be heard by a jury.  *Id.*

Defendant argues that Defendant Minor did not personally participate in the events or decisions leading up to the assault.  Def.'s Mt. for Sum. Jud., ECF No. 47, p. 9.  However, as noted above, personal participation is only one of the links between a supervisor and a constitutional deprivation.  The others include the exercise of control or direction, or the failure to supervise subordinate employees.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997).  Defendant argues that Plaintiff has not demonstrated the requisite evidence to establish an affirmative link between the supervisor's actions and the constitutional violation.

I disagree.  Plaintiff has alleged enough factual matter that could establish that Defendant Minor was responsible for managing the staff at the jail, for implementing policies and procedures including those around removing inmate restraints and maintaining an unlocked and unsecured visitation room next to the booking area, and for finding in his post-assault review that no action or inaction by Defendant Hochmuth would trigger any kind of internal review.  A fact finder could impose liability against Defendant Minor in his individual capacity by virtue of his control or direction of the jail staff, or by his failure to properly supervise staff members, including Defendant Hochmuth.  Accordingly, summary judgment on this issue is precluded.

### C. Qualified Immunity – both Defendants

Defendants argue that they are both entitled to the defense of qualified immunity. This defense completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *See Hope v. Pelzer*, 536 U.S. 730 (2002). Once this defense is pled, the burden shifts to the plaintiff to show that the defendants are not entitled to the defense through a two-part test established by the Supreme Court: 1) whether the plaintiff's allegations, if true, establish a constitutional violation, and 2) whether the right being asserted was clearly established. *Id.*

"A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment." *Cottone v. James*, 326 F.3d 1352, 1358 (11th Cir. 2003); *see also Hope*, 536 U.S. at 736-38 (finding that officials acting with deliberate indifference to an inmate's safety was an Eighth Amendment violation). The substantial risk of serious harm that Plaintiff faced appears to be obvious in the circumstances of this case. Accordingly, Plaintiff's allegations, if true, would establish a constitutional violation. As found by the Supreme Court in *Farmer*, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *See Farmer*, 511 U.S. at 833. That duty requires prison officials to take reasonable measures to abate substantial risks of serious harm, of which they are aware. *Id.* at 847. That is the "clearly established" constitutional right in this case.

Plaintiff has produced enough evidence to question whether the measures taken to abate the risk to him were reasonable. He was moved to another housing pod, which

was reasonable. However, Plaintiff was still exposed to Ramos, and a fact finder viewing Ramos' record could reasonably conclude that he had a propensity for violence, that the Defendants knew of this propensity because it was reflected in his record, and that in light of the documented risk to Plaintiff by Ramos, any exposure to Ramos was unreasonable. This is sufficient to defeat qualified immunity at the summary judgment stage.

### D. Municipal Liability – Defendant Minor in his official capacity

The Supreme Court held that "a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Only those municipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability. *See Wulf v. City of Wichita*, 883 F.2d 842, 868 (10th Cir. 1989) (citing *City of St. Louis v. Proprotnik*, 108 S.Ct. 915 (1988)).

Municipal liability can be imposed, however, even if the action is taken by an individual other than the final policymaker. *Id.* The parties do not dispute that Defendant Minor set the customs, practices, and policies of the Summit County Sheriff's Office. If an authorized policymaker, in this case Defendant Minor, approves of a subordinate's decision and the basis for it, this ratification would be chargeable to the municipality because the decision of the policymaker is final. *See Proprotnik*, 108 S.Ct. at 926. To succeed on a Section 1983 claim against a municipality, the Plaintiff must

show 1) that a municipal employee committed the constitutional violation, and 2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *See Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006). As discussed above, a genuine issue of material fact exists as to whether a constitutional violation occurred. Accordingly, summary judgment is not appropriate unless the Plaintiff has failed to create a genuine issue of material fact as to whether a municipal policy or custom was the moving force behind the constitutional deprivation.

A municipal policy or custom may take the form of a decision made by the final policymaker, or the failure to adequately train or supervise employees, as long as that failure results from a deliberate indifference to the injuries that might be caused. *See Bryson v. City of Okla. City*, 627 F.3d 784 (10th Cir. 2010); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175 (10th Cir. 2010).

Plaintiff contends that Defendant Minor's inadequate training and supervision of Defendant Hochmuth led to a deliberate indifference to a substantial risk of serious harm to the Plaintiff's safety. Plaintiff contends that the policies, customs, and practices of removing an inmate's restraints in the booking area and leaving the door to the professional visitation room unlocked and unsecured were imposed and approved by Defendant Minor. Pl.'s Resp., ECF No. 54, p. 18. Plaintiff contends that these policies, customs, and practices occur without any specific training on the topic of identifying, preventing, and investigating inmate-on-inmate assaults. *Id.* at 18-19. Plaintiff further asserts that Defendant Minor, as final policymaker for Summit County, conducted an internal investigation following the assault, finding "no action or inaction

that would trigger an internal review of the staff's actions regarding the assault."  *Id.* at 9, 19-20.  Plaintiff asserts that this finding was ratified by other jail officials.  *Id.* at 20.

Defendant contends that there is no evidence that any custom, policy, or practice of the Sheriff's Office caused a violation of the Plaintiff's rights.  Def.'s Mt. for Sum. Jud., ECF No. 47, p. 12.  Defendant contends that it had policies in place designed to prevent inmate-on-inmate violence, and that those polices were followed in this case.  *Id.* at 13.  Defendant cites the fact that Plaintiff was housed separately from Ramos after the threat to him was known, and that communication was made to the staff were to remain separate.  *Id.* at 13-14.  Defendant also contends that fights in the jail are rare.  *Id.* at 14.  Further, Defendant argues that a single incident is not sufficient to impose municipal liability.

Defendant cites *Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726 (10th Cir. 2014) for the idea that a plaintiff must demonstrate that the municipal action was taken with deliberate indifference to the known or obvious consequences.  Defendant notes that "Plaintiff must show that the risk of harm posed by the practices of unshackling inmates in the booking area and keeping the visitation door unlocked was so obvious that Sheriff Minor can reasonably be said to be deliberately indifferent to that risk."  Def.'s Reply, ECF No. 62, p. 12.  Defendant states that Plaintiff has demonstrated "no evidence on which a jury could find that the risk of inmate-on-inmate violence from either practice was so obvious that Sheriff Minor should have known about it," noting no prior similar incidents.  *Id.*

I find this argument unpersuasive.  Plaintiff has presented sufficient evidence for a fact finder to determine that both the actions of Defendant Hochmuth and the policies

established by Defendant Minor were taken with deliberate indifference to known or potential consequences. Although Plaintiff was moved to a separate housing pod away from Ramos, and a staff communication was disbursed to put everyone on notice that the two inmates were to be separated at all times, and although a post-assault investigation was conducted by Defendant Minor, genuine issues of material fact remain as to the reasonableness of both the actions of Defendant Hochmuth, the policies enacted by Defendant Minor, and the sufficiency of Defendant Minor's supervision over jail staff. Accordingly, summary judgment in favor of the Defendants is precluded.

IV. CONCLUSION

The record indicates that with regard to Plaintiff's claims, numerous factual issues are disputed. Viewing the evidence in the light most favorable to the Plaintiff, I find that he has demonstrated that material issues of fact exist that preclude the entry of summary judgment in the Defendants' favor. Accordingly, it is

ORDERED that Defendant's Motion for Summary Judgment (ECF No. 47) is **DENIED.**

Dated: December 8, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge